## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DEIDRA Y. COLE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 09-0337-C |
| ALABAMA DEPARTMENT OF FORENSIC SCIENCES | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 22) and brief and evidence filed in support of same (Doc. 23), all filed December 7, 2010; Plaintiff's response (Doc. 25), filed January 7, 2011; and Defendant's reply (Doc. 26), filed January 21, 2011.[1] Upon consideration of the foregoing pleadings and all other relevant

---

[1] Defendant's motion for summary judgment is before the Court for disposition, pursuant to 28 U.S.C. § 636(c), on the implicit consent of the parties. *Compare Roell v. Withrow*, 538 U.S. 580, 590 (2003) ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.") *with* Doc. 2, at p. 1 ("This civil action has been randomly assigned to United States Magistrate Judge William E. Cassady for all purposes including trial. In accordance with 28 U.S.C. § 636(c), the Magistrate Judges of this District Court have been designated to conduct any and all proceedings in a civil case, including a jury or non-jury trial, and to order the entry of a final judgment, upon the consent of all parties. . . . You have the right to have your case reassigned to a United States District Judge for trial and disposition. If you wish to have the case reassigned, you or your attorney need only return the Request for Reassignment to a United States District Judge . . . .") *and* Doc. 13, at ¶ 8 ("This consent action shall be pretried by Magistrate Judge William E. Cassady . . . ."); *see also Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350-51 (11th Cir. 2007) ("Eight months of continual participation in pretrial proceedings justifies the inference of consent from a litigant aware of the need to consent.")

pleadings in the file, and for the reasons that follow, the Court **GRANTS** Defendant's motion (Doc. 22) in its entirety, and **DISMISSES** Plaintiff's complaint (Doc. 1), as amended (Doc. 8), **WITH PREJUDICE**.[2]

## FACTUAL BACKGROUND

Plaintiff Deidra Cole, a black female and eleven-year veteran of the Milwaukee, Wisconsin Police Department, applied for the position of Forensic Investigator I/II, 20923 (also referred to as a death investigator), with the Alabama Department of Forensic Sciences ("ADFS") in November 2007. (*See* Docs. 23-1 & 23-2.) Scott Milroy, director of ADFS's Mobile laboratory, interviewed Plaintiff and recommended to Michael F. Sparks, Director of ADFS, with appointing authority for the Department, that ADFS hire Plaintiff for the position. (*See* Doc. 23-3, Michael F. Sparks Aff., ¶ 1; Doc. 25-3, Scott Milroy Dep., 15:4-21.) Director Sparks then notified Plaintiff of her appointment via a letter dated March 24, 2008. (Doc. 23-5.) That letter also explained the necessity that Plaintiff serve a probationary period of six months "before [she could] attain status under the State Merit System," and that during this period, "[her] work performance [would] be evaluated and [her] employment [could] be terminated at any time if [she was] not performing [her] job in a satisfactory

---

[2] Any appeal taken from this memorandum opinion and order and judgment must be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 2, at p. 1 ("An appeal from a judgment entered by a Magistrate Judge may be taken directly to the United States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court.").)

manner."³  (*See id.*)  *See also* ALA. CODE § 36-26-21(b) (1975) ("At any time during [a probationary] period, the appointing authority may remove an employee if, in the opinion of the appointing authority, the working test indicates that such employee is unable or unwilling to perform his duties satisfactorily or that his habits and dependability do not merit his continuance in the service.").

Tonya Pichea, also an ADFS death investigator in Mobile, was designated as the training supervisor for new death investigators in Mobile.  (*See* Doc. 23-6, Apr. 17, 2008 Letter from Kenneth Snell, Interim Chief State Medical Examiner.)  While Ms. Pichea was designated as the training supervisor, she was not given supervisory duties over the death investigators in Mobile, and Mr. Milroy remained "the administrative supervisor for all the Forensic Investigators."  (*See id.*)  The Department did not have a standardized training program for death investigators at the time Plaintiff was hired, and training was based on the background and experience of the particular death investigator.  (*See* Doc. 25-3, Scott Milroy Dep., 87:5-88:8)  Indeed, Ms. Pichea was "tasked with creating a Death Investigator manual

---

³ Plaintiff seems to implicitly argue that the fact that she was separated prior to the conclusion of her probationary period supports an argument that Defendant's legitimate, nondiscriminatory reason for separating her from her employment was a pretext for discrimination. (*See* Doc. 25, p. 7 (Plaintiff was separated "without giving her an opportunity to complete her six (6) month probationary period.").)  Alabama law clearly gave Defendant the power to make this decision.  *See* ALA. CODE § 36-26-21(b).  A related contention is Plaintiff's argument that she was separated from employment "without ever being formally reprimanded for anything."  (Doc. 25, p. 3; *see id.*, p. 7 ("Though the State of Alabama has a progressive discipline policy, it was not used for Plaintiff.").)  Mr. Milroy made it clear at his deposition—and Plaintiff has not challenged the fact— that Defendant did not have to follow a progressive discipline policy with Plaintiff due to her probationary status.  (*See* Doc. 25-3, Scott Milroy Dep., 92:19-93:1).  *See also* ALA. CODE § 36-26-21(b).

based on [her new] role as the training supervisor." (Doc. 23-6.)

Ms. Pichea kept notes of her—not uncontentious—"on-the-job" training of Plaintiff from May 7, 2008 through June 22, 2008 (Doc. 23-10), and concluded in her June 22, 2008 entry that she did not "feel [she could] train [Plaintiff] because she [was] not receptive to the training process." (*Id.*, p. 8.) As Defendant admits in its brief, the record shows that Ms. Pichea was "not an ideal supervisor." (Doc. 23, p. 8.) And Mr. Milroy did not shy away from this fact during his deposition. (*See* Doc. 25-3, Scott Milroy Dep., 36:20-23 ("Tonya has a problem getting along with anyone she supervises, and there [were] issues prior to her becoming any kind of supervisor[.]"); *id.*, 60:11-15 (Ms. Pichea "had trouble getting along with all her employees."); *id.*, 77:23-78:2 ("Q. Did [Ms. Pichea] have any problems getting along with the guys? A. Yes."); *id.*, 89:5-9 ("Q. Is it just a fair statement that Tonya is not a good manager without regard to the race or gender or the person that she is supervising? A. This is true."); *see also* Doc. 23-11, Buford Lee Knopps, III Aff., ¶ 3 (in which Mr. Knopps, another death investigator in Mobile, describes Ms. Pichea as "a micro-managing supervisor who watches all employees closely" who "was equally strict on all employees, without regard to race or gender").)

On August 2, 2008, Plaintiff was sent to investigate the suspicious death of Janet Preston. (*See* Doc. 23-12, Scene Investigation List, p. 2.) Mobile Police Department Corporal Angela Prine was also called to investigate Ms. Preston's death, was on the scene with Plaintiff, and testified that:

> During the investigation, Diedra Cole exited the apartment where the decedent was located. I could hear what appeared to be screaming and I went to inquire as to what was going on. I observed Diedra Cole yelling at the decedent's daughter, Jessica Denham. Cole and Denham were standing in the parking lot in front of the decedent's apartment. I walked over and stepped between Cole and Denham. Denham was crying. I asked her what was going on and she advised that Cole was yelling at her after she told Cole her deceased mother had Hepatitis C. Denham stated Cole told her that she put her life in danger by not saying something prior to Cole going into the apartment. Cole continued to rant and rave in the parking lot about being exposed to Hepatitis C. I then notified the Alabama of Forensic Sciences Investigator Supervisor Tonya Pichea. I advised Pichea as to what occurred and the unprofessionalism of Cole with a victim's family member. I gave Pichea the contact information of Denham. Later I spoke with Alabama of Department of Forensic Sciences Director Scott Milroy of the incident.

(Doc. 23-13, Cpl. Angela Prine Aff.) Plaintiff has not attempted to discredit this testimony.

Mr. Milroy met with Corporal Price on August 4, 2008, and the next day, he sent a memorandum to Director Sparks (Doc. 23-14) regarding the incident. Also on August 4, 2008, Ms. Pichea prepared a training assessment of Plaintiff, sent to Mr. Milroy, in which she concluded that she did "not feel that [Plaintiff had] the capability to refrain from engaging in conduct that is detrimental to the department as a whole" and that Plaintiff's "underperformance [was] not acceptable." (Doc. 23-15.) On the heels of this assessment and the August 2, 2008 incident, Mr. Milroy sent a second memorandum to Director Sparks, also dated August 5, 2008 (Doc. 23-16), in which he outlined seven specific points that demonstrated that Plaintiff "has not met the standards for an investigator in training." (*Id.*) While Mr. Milroy conceded that "some of these points [could have been] addressed by training," Plaintiff's conduct at the death scene on August 2, 2008 constituted "conduct

unbecoming as an ADFS employee that adversely affects the morale, operations, and efficiency of the Department," and "lower[s] or destroys public respect and/or confidence in ADFS." (*Id.*) Mr. Milroy then concluded by recommending that Plaintiff be separated "before or at the end of the probationary period." (*Id.*) Director Sparks adopted these observations and Mr. Milroy's recommendation, and sent a notice of separation letter the same day. (Doc. 23-18.; *see also* Doc. 23-3, Michael F. Sparks Aff., ¶¶ 5-6.)

## SUMMARY JUDGMENT STANDARD

It is well-established that summary judgment is proper—consistent with Federal Rule of Civil Procedure 56(c)—"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And, it should go without saying, that "[t]he summary judgment rule is to be applied in employment discrimination cases as in any other case." *Archie v. Home-Towne Suites, LLC*, ___ F. Supp. 2d ____, 2010 WL 4439765, at *2 (M.D. Ala. Nov. 8, 2010) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc)). "No thumb is to be placed on either side of the scale." *Champman*, 229 F.2d at 1026. That is, just because "questions of fact in job discrimination cases are both sensitive and difficult and there will seldom be eyewitness' testimony as to the employer's mental processes" does not mean "that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *Id.* (quoting *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)) (internal quotation marks and some punctuation omitted); s*ee also Hill v. Guyoungtech USA, Inc.*, Civil Action No. 07-0750-KD-M, 2008 WL 4073638, at *5 (S.D. Ala. Aug. 26, 2008); *Leatherwood v. Mobile Hous. Bd.*, Civil Action No. 09-00410-CB-N, 2010 WL 3039598, at *2 (S.D. Ala. Aug. 4, 2010).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." [*Celotex*, 477 U.S.] at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.
>
> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

*Archie*, 2010 WL 4439765, at *1.

DISCUSSION

Plaintiff brings claims of employment discrimination and retaliation under Section 1981[4] and Title VII. (*See* Doc. 8, 1st Am. Compl., ¶¶ 36-41 (racial discrimination), ¶¶ 48-54 (gender discrimination), ¶¶ 55-59 (retaliation based on gender), ¶¶ 60-64 (retaliation based on race).) Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). And "under the anti-retaliation clause of Title VII, it is an unlawful employment practice for an employer to, *inter alia*, discriminate against an employee '(1) because she has opposed any practice made an unlawful employment practice by this subchapter, or (2) because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1321 (N.D. Ga. 2009) (quoting 42 U.S.C. § 2000e-3(a)).

---

[4] Plaintiff's Section 1981 claim is based on alleged racial discrimination and retaliation. (*See* Doc. 8, 1st Am. Compl., ¶¶ 42-47 & 65-69.) However, in her response to the summary judgment motion, Plaintiff "concede[s] the § 1981 claims brought by and through § 1983 in this particular case, [] because those very same remedies available under § 1981 are also available under Plaintiff's Title VII claims." (Doc. 25, p. 10.) *See Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1302 & n.11 (N.D. Ga. 2009) (recognizing that "both Title VII and § 1981 employ the same analysis in considering employment discrimination claims" based on race, and as such the court would "explicitly addresses [the plaintiff's] Title VII claims with the understanding that the analysis also applies to her § 1981 claims where appropriate"). As such, and as an initial matter, the Court **GRANTS** Defendant's summary judgment motion as to those claims—Counts II and IV of the First Amended Complaint. *See, e.g., In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, Nos. 4:08-MD-2004 (CDL) & 4:08-cv-05000 (Crews et al.), 2010 WL 4386902, at *1 (M.D. Ga. Oct. 29, 2010).

The crux of plaintiff's discrimination and retaliation claims is that her training supervisor Tonya Pichea launched a vendetta against her based on her gender and race. *See, e.g.,* Doc. 25-1, Deidra Scott Dep., 88:21-89:15 (relating that she heard that another female death investigator "had basically been . . . railroaded because Tonya did not like her" before Plaintiff started; "I know for sure that I personally heard Tonya, on several occasions, during the interview process of seeking to find an additional investigator, [] ask Scott [Milroy] not to hire any more females, and if he could please hire a male. Scott, himself, told me that Tonya did not prefer to work with females, and that he was asked her to hire a male."); *id.*, 97:9-98:12 (when asked for specifics about any conversations she had with Mr. Milroy regarding disparate treatment by Ms. Pichea based on her race, Plaintiff could not recall—e.g., "Q. Now, tell me of the specific things that you complained to Mr. Milroy about that constituted your being treated differently because of your race? A. I don't remember.").[5]

---

[5] Much of the evidence Plaintiff offers in opposition to Defendant's motion for summary judgment is inadmissible hearsay—*e.g.,* "Milroy told Plaintiff that Pichea wanted him to hire males" (Doc. 25, p. 4); "After recommending that some of the African-American females were the most qualified for the position, Plaintiff was informed by both Steiber and Milroy that Milroy needed to hire a male because Pichea did not get along with other females" (*id.*, p. 7); "Plaintiff was told by Kevin Hollis that [he] overheard Pichea telling Michelle Finch that Plaintiff, the only African-American investigator, did not 'fit in' as a Death Scene investigator" (*id.*); "After Plaintiff's termination, Plaintiff learned from Zenovia (last name unknown) that Pichea asked staff members, including Zenovia, to notify her of any mistakes discovered on Plaintiff's paperwork." (*Id.*, p. 8.) It should go without saying that "inadmissible hearsay cannot be considered on a motion for summary judgment." *Dixon v. Odwalla, Inc.*, No. 10-10952, 2010 WL 4110682, at *2 (11th Cir. Oct. 14, 2010) (per curiam) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)); *see* FED. R. EVID. 801(c) (hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); FED. R. EVID. 802 (hearsay is generally not admissible); *see also Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 470 n.8 (D.S.C. 2009) (employment discrimination case, at summary judgment,

Where a plaintiff does not present direct evidence of discrimination—as is the case here—she "must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," *King v. Ala. Dep't of Pub. Health*, Civil Action No. 09-0503-WS-C, 2010 WL 3522381, at *7 (S.D. Ala. Sep. 2, 2010) (addressing racial discrimination and/or retaliation claims), which requires the plaintiff "to make out a prima facie case." *Id.* Although this requirement "is not an onerous one," *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001), "in a disparate-treatment case like this one,[6] to satisfy her prima facie burden, a plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class." *Roland v. U.S. Postal Serv.*, 200 Fed. App'x 868, 871-72 (11th Cir. 2006) (per curiam) (citing *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam)) (footnote added).

An alternative to the fourth element (which appears applicable to this case) is: that a plaintiff "was replaced by a person outside [her] protected class." *Maynard*, 342 F.3d at

---

where the court noted that "although Duggan states in his affidavit that his former supervisor **had told him** that Windham and Ross were targeting him for termination because he was a successful male CRNA, . . . Duggan has produced no admissible evidence to that effect") (emphasis added).

    6    "The entire thrust of Title VII is directed against ***discrimination***-disparate treatment on the basis of race or sex that intentionally or arbitrarily affects an individual." *Arz. Governing Comm. for Tax Deferral Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1104 (1983) (Powell, J., concurring and dissenting) (emphasis in original).

1289; *see id.* ("and (4) he was replaced by a person outside his protected class *or* was treated less favorably than a similarly-situated individual outside his protected class") (emphasis added); *see also Jiann Min Chang v. Ala. Agric. & Mech. Univ.*, 355 Fed. App'x 250, 251 (11th Cir. 2009) (per curiam) (applying alternative fourth element); *but see Hanford v. Geo Group, Inc.*, 345 Fed. App'x 399, 405 n.7 (11th Cir. 2009) (noting that the plaintiff, on appeal, "argue[d] he does not need to show similarity between himself and other coworkers because he satisfies the prima facie case merely by demonstrating someone outside his protected class was promoted to fill the position he vacated," citing *Maynard*, and then noting that "other statements of the *McDonnell Douglas* test typically do not include the option that a plaintiff show he was 'replaced by a person outside his protected class,'" but declining to determine "whether our recitations of the *McDonnell Douglas* test require clarification" because the appeal could be resolved on pretext).

Establishment of a prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee," *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *see also EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002), which requires that the employer rebut it by "articulat[ing] a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman*, 229 F.3d at 1024.

> However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is

> sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.
>
> If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

*Id.* at 1024-25 (citations and quotation marks omitted); *see also Combs*, 106 F.3d at 1543 (plaintiff can avoid judgment as a matter of law only by "producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions"); *Ash v. Tyson Foods, Inc.*, 392 Fed. App'x 817, 825 (11th Cir. 2010) (per curiam) (similar). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Roland*, 200 Fed. App'x at 872 (quoting *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273).

Plaintiff's retaliation claims are analyzed using the same "burden-shifting framework." *Anderson*, 678 F. Supp. 2d at 1321 ("In determining whether an employer has retaliated against an employee for engaging in protected activity, the Court analyzes the claim using the burden-shifting framework for disparate treatment claims." (citing *Adams v. Cobb County Sch. Dist.*, 242 Fed. App'x 616, 620 (11th Cir. 2007)).

Plaintiff has established a prima facie case of discrimination, *see Maynard*, 342 F.3d

at 1289, by showing that: (1) she is an African-American woman (*see* Doc. 23-2, Plaintiff's job application), making her a member of a protected class, *see, e.g., Gonzalez v. Allied Barton Sec. Servs.*, No. 08 Civ. 9291(RJS)(RLE), 2010 WL 3766964, at *4 (S.D.N.Y. Sep. 7, 2010) (stating that the plaintiff " is an African-American woman and therefore a member of a protected class under Title VII"); (2) she was qualified for the position (*see* Doc. 23, p. 4 (Defendant conceded such, stating that "Plaintiff was qualified for the position, having a bachelor's degree and eleven years experience as a police officer for the Milwaukee Police Department")); (3) she suffered an adverse employment action (*see* Doc. 23-20, Plaintiff's Aug. 5, 2008 separation letter); and (4) she was replaced by someone outside her protected class (*see* Doc. 25-3, Scott Milroy Dep., 76:18-22 (testifying that Plaintiff was replaced by Trace Skelton, "a white male")). *See Maynard*, 342 F.3d at 1289; *Jiann Min Chang*, 355 Fed. App'x at 251.

Plaintiff, however, has not shown that Defendant's articulated legitimate, nondiscriminatory reason for her separation from employment—that her confrontation with the daughter of a decedent at the August 2, 2008 death scene constituted conduct unbecoming[7]—is pretextual.[8] *See Rowan v. Hayes Chrysler-Dodge-Jeep*, No.

---

[7] In addition to the events of August 2, 2008, Defendant presents other evidence of poor job performance by Plaintiff. (*See, e.g.,* Docs. 23-14 & 23-15.) *See Ramsay v. Broward County Sheriff's Office*, No. 05-61959-CIV, 2008 WL 111304, at *7 (S.D. Fla. Jan. 8, 2008) (context of Title VII failure to promote claim) ("Once the plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the employer ***to articulate (not prove)*** some legitimate, nondiscriminatory justification" for the employment decision.) (emphasis added). Articulating claims of poor performance by Plaintiff clearly discharges this burden. *See, e.g., Martin*

- 13 -

Civ.A.1:04CV1195-JEC, 2006 WL 825873, at *6 (N.D. Ga. Mar. 27, 2006) ("At this stage, in order to survive summary judgment, plaintiff must present evidence sufficient to permit a reasonable factfinder to conclude that the reason given by defendant was not the real reason for his termination, but merely a pretext for discrimination.")

"A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." *Worley v. City of Lilburn*, No. 09-15537, 2011 WL 43543, at *3 (11th Cir. Jan. 6, 2011) (citing *Hicks*, 509 U.S. at 515). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must meet it 'head on and rebut it.'" *Id.* (quoting *Chapman*, 229 F.3d at 1030). However, a "proffered explanation is unworthy of belief if the plaintiff demonstrates 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

*v. Ryder Distrib. Res., Inc.*, 811 F. Supp. 658, 666 (S.D. Fla. 1992); *cf. Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1259 (M.D. Ala. 2004) ("Plainly, job performance, failure to follow instructions, and insubordination are all legitimate, nondiscriminatory considerations.").

[8] Plaintiff contends that Defendant's proffered legitimate, nondiscriminatory reason for Plaintiff's separation from employment is "that [Plaintiff] was not qualified to be a death scene investigator for poor performance issues," was "therefore not capable of performing successfully in a death scene investigator position" (Doc. 25, p. 16), or alternatively, Defendant was "simply making routine business decisions when they chose to terminate Plaintiff for poor work performance." (*Id.*, pp. 21 & 26.) This interpretation of Defendant's nondiscriminatory reason for her separation does not comport with the evidence in the record, and as such, the Court does not have to accept Plaintiff's mischaracterization. *See Salib v. P & O Ports N. Am., Inc.*, No. 05 CV 5313(NG)(MDG), 2008 WL 4724008, at *12 (E.D.N.Y. Oct. 28, 2008) (rejecting a plaintiff's "interpretation of [a] defendant's nondiscriminatory reason" where it "depends on misinterpretations of the record").

employer's proffered legitimate reasons for its action that a reasonable factfinder' could disbelieve it." *Scarborough v. Mineta*, No. 3:03CV328-RS-EMT, 2006 WL 931859, at *16 (N.D. Fla. Apr. 10, 2006) (quoting *Combs*, 106 F.3d at 1538). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25. "Conclusory allegations or unsupported assertions of discrimination, without more, 'are not sufficient to raise an inference of pretext.'" *Worley*, 2011 WL 43543, at *3 (quoting *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)").

To adapt the words of Plaintiff's counsel during Scott Milroy's deposition, Plaintiff's behavior at the August 2, 2008 death scene is "what brought [her] employment . . . to a crisis point." (Cite, p. 94.) Indeed, the August 5, 2008 separation letter, after listing seven itemized reasons for Plaintiff's separation during her probationary period, states,

> While all of the aforementioned reasons are critical in nature, the most disturbing is your recent crime scene behavior as described as being confrontational with a family member of a deceased subject. This behavior is intolerable. ADFS employees must represent the Department in a professional and respectful manner at all times, but especially in the eyes of the public.

(Doc. 23-18; *see also* Doc. 25-3, Scott Milroy Dep., 96:12-97:7 ("Q. Did . . . Deidra Cole's behavior on that occasion warrant a reprimand? A. In my opinion, no. Q. Okay. Then why

- 15 -

was she terminated? A. I mean, looking at State's Exhibit 1 [Doc. 23-18], taking into account all the other reasons which Mr. Sparks mentions in his letter, the first one through seven, states that a lot of those could be corrected through training, they could be corrected through progressive discipline, but this incident is conduct unbecoming, it defaces the department itself, shed a very bad light on our department and it's not -- should not happen. Q. So basically it was the crisis with the family member that triggered the separation is that correct? A. That's correct."); Doc. 23-17, Excerpts from Ala. Dep't of Forensic Scis. Operations Manual, § 4.10, III (providing that conduct unbecoming is "[a]ny conduct that adversely affects the morale, operation, or efficiency of the Department and its mission; or any conduct, which has a tendency to adversely affect, lower, or destroy public respect and/or confidence in ADFS; or brings discredit upon an ADFS employee or Department as a whole"—including "any conduct, which brings the Department or employees (sworn and non-sworn) of the Department into disrepute"—which, "if proven, will ordinarily result in discipline imposed upon the employee, ranging from counseling to termination").)

Plaintiff fails to offer an explanation for—or even directly address—the August 2, 2008 incident in her opposition (*see* Doc. 25, p. 3 (stating that Plaintiff "was additionally accused of not getting along with others including people at death scene calls"), choosing instead to offer "letters of recommendation" from members of the community "commending her for her good demeanor, her professionalism, her compassion for surviving family members at death scenes, and her devotion to training and improving her skills as a death

scene investigator for ADFS." (*Id.*; *see also* Docs. 25-9; 25-10; 25-11.) However, evidence of Plaintiff's past good performance cannot be used now to show that later unsatisfactory performance—cited as the principal reason for her separation—is merely a pretext for discrimination. *See Muse v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 96-CV-6221 FB ASC, 2000 WL 1209427, at *4 (E.D.N.Y. Aug. 22, 2000) ("Prior good evaluations of the plaintiff's work performance alone cannot establish that later unsatisfactory evaluations are a pretext for discrimination.") (quoting *Moorer v. Grumman Aerospace Corp.*, 964 F. Supp. 665, 674 (E.D.N.Y. 1997), *overruled on other grounds*).

Plaintiff has presented no credible evidence that Defendant intentionally discriminated against her based on her race or gender. Although she pins much of her claims on her battles with what Defendant admits is a difficult training supervisor, there is no credible evidence that this training supervisor was—arguably—unfair to Plaintiff ***based*** on her race or gender. *See, e.g., Muse*, 2000 WL 1209427, at *4 ("Muse's submissions present no discriminatory reasons for the substantive criticisms set forth in the evaluations. Muse's opinion that the criticisms contained in his performance evaluations were unfair, supported only by his own conclusory statements to that effect, cannot bootstrap his claims into a Title VII claim of discrimination. Muse merely opines that the evaluations were unfair or unjustified . . . . These complaints are simply that he was wrongfully discharged-not that he was discharged for discriminatory reasons.") (citations and quotation marks omitted). Based on the evidence in the record, it appears that Ms. Pichea was difficult on an equal-opportunity basis. (*See,*

*e.g.,* Doc. 25-3, Scott Milroy Dep., 36:20-23, 60:11-15, 77:23-78:2, 89:5-9; Doc. 23-11, Buford Lee Knopps, III Aff., ¶ 3.) Unfortunately for Plaintiff's case, "Title VII is not a 'general civility code,'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)), and "unfairness is not enough." *Duggan*, 663 F. Supp. 2d at 470; *see also Hairston v. Geren*, Civil Action No. C-08-382, 2009 WL 3585411, at *5 (S.D. Tex. Oct. 26, 2009) ("Courts have consistently rejected claims of gender or racial harassment when the harassment is indiscriminately inflicted upon all individuals.") (citing cases).

Because Plaintiff has offered—at most—"unsupported assertions of discrimination," *Worley*, 2011 WL 43543, at *3, she has failed to carry her burden to show that Defendant's legitimate, nondiscriminatory reason is a pretext for discrimination. *See, e.g., Meiri*, 759 F.2d at 998. As such, Defendant is entitled to summary judgment. *See Chapman*, 229 F.3d at 1024-25; *see also DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("When an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997)).

CONCLUSION

Defendant is entitled to judgment as a matter of law on all claims, and its motion (Doc. 22) is due to be **GRANTED**.  This action is **DISMISSED WITH PREJUDICE**, and judgment will be entered in favor of Defendant and against Plaintiff on all claims.

**DONE and ORDERED** this the 15th day of February, 2011.

          s/ WILLIAM E. CASSADY
          **UNITED STATES MAGISTRATE JUDGE**